UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| RANDY ETHAN HALPRIN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CAUSE NO. 3:19-cv-1203-L |
| | § | |
| | § | |
| LORIE DAVIS, Director, Texas | § | |
| Department of Criminal Justice, | § | CASE INVOLVING THE DEATH |
| Correctional Institutions Division, | § | PENALTY |
| | § | |
| Respondent. | § | |

## MOTION FOR DISCOVERY AND BRIEF IN SUPPORT

TO THE HONORABLE SAM A. LINDSAY:

COMES NOW Petitioner RANDY ETHAN HALPRIN, by and through his undersigned counsel, and pursuant to Rule 6 of the Rules Governing § 2254 Cases in the District Courts ("Habeas Rule 6"), moves the Court to authorize him to conduct the discovery described herein. This Motion is based on the files and records in this case and the following points and authorities.[1]

---

[1] For the reasons set forth in this Motion, Mr. Halprin believes obtaining discovery at this point in the proceedings is appropriate. Mr. Halprin also recognizes that this claim is unexhausted. For that reason, Mr. Halprin has filed to stay and abate these federal proceedings pending exhaustion in state court. ECF No. 8.

PAUL E. MANSUR
Texas Bar No. 796078
P.O. Box 1300
Denver City, Texas 79323
(806) 592-2797 (tel.)
(806) 592-9136 (fax)
paul@paulmansurlaw.com

MAUREEN FRANCO
FEDERAL PUBLIC DEFENDER

TIVON SCHARDL
CAPITAL HABEAS UNIT CHIEF
Florida Bar No. 73016
TIMOTHY GUMKOWSKI
ASSISTANT FEDERAL DEFENDER
Texas Bar No. 24104788
Federal Defender Office
919 Congress, Suite 950
Austin, Texas 78701
737-207-3007 (tel.)
512-499-1584 (fax)

Attorneys for Petitioner

DATED:  July 17, 2019

# TABLE OF CONTENTS

Table of Authorities..................................................................................................ii
I.     Applicable Law ............................................................................................ 2
II.    Procedural Issues ......................................................................................... 3
    A.   "Jurisdiction" ......................................................................................... 3
    B.   Exhaustion ............................................................................................. 4
III.   Good Cause .................................................................................................. 7
IV.    Requests For Discovery ............................................................................... 8
    A.   Records in Support of the Judicial Bias Claim ................................... 8
    B.   Depositions in Support of the Judicial Bias Claim ........................... 10
    C.   Subpoenas in Support of the Judicial Bias Claim ............................ 13
Conclusion...........................................................................................................17
Certificate of Conference.....................................................................................19
Certificate of Service...........................................................................................19

# TABLE OF AUTHORITIES

Cases

*Blackledge v. Allison*, 431 U.S. 63 (1977) ........................................................... 3

*Bracy v. Gramley*, 520 U.S. 899 (1997) .................................................. passim

*Buck v. Davis*, 137 S. Ct. 759  (2017) .................................................. 1

*Buntion v. Quarterman*, 524 F.3d 664 (5th Cir. 2008) .................................. 1

*Castille v. Peoples*, 489 U.S. 346 (1989) .................................................. 4

*Castro v. United States*, 540 U.S. 375 (2003) .................................................. 6

*Cullen v. Pinholster*, 563 U.S. 170 (2011) .................................................. 4, 5

*Ex parte Campbell*, 226 S.W.3d 418 (Tex. Crim. App. 2007) ........................... 5

*Harris v. Nelson*, 394 U.S. 286 (1969) .................................................. 2

*Jimenez v. Quarterman*, 555 U.S. 113 (2009) .................................................. 5

*Jones v. Wood*, 114 F.3d 1002 (9th Cir. 1997) .................................................. 3

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) .................................................. 6, 7

*Panetti v. Quarterman*, 551 U.S. 930 (2007) .................................................. 6

*Rhines v. Weber*, 544 U.S. 269 (2005) .................................................. 6, 7

*Rivera v. Quarterman*, 505 F.3d 349 (5th Cir. 2007) ...................................... 5

*Rocha v. Thaler*, 628 F.3d 218 (5th Cir. 2010) .................................................. 5

*Rose v. Lundy*, 455 U.S. 509 (1989) .................................................. 4

*Rose v. Lundy*, 459 U.S. 509 (1992) .................................................. 6

*Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007) ...................................... 6

*Townsend v. Sain*, 372 U.S. 293 (1963) .................................................. 3

*Wainwright v. Sykes*, 433 U.S. 72 (1977) .................................................. 5

Statutes and Rules

28 U.S.C § 2254(d)(2) .................................................. 5

28 U.S.C. § 2244(b) .................................................. 4

28 U.S.C. § 2254(d) .................................................. 5

28 U.S.C. § 2254(d)(1) .................................................. 5

28 U.S.C. § 2254(e)(2) .................................................. 4, 7

Federal Rule of Civil Procedure 26(b) .................................................. 2

Rule 6 of the Rules Governing § 2254 Cases in the District Courts ............................ 1, 2, 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| RANDY ETHAN HALPRIN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CAUSE NO. 3:19-cv-1203-L |
| | § | |
| | § | |
| LORIE DAVIS, Director, Texas | § | |
| Department of Criminal Justice, | § | CASE INVOLVING THE DEATH |
| Correctional Institutions Division, | § | PENALTY |
| | § | |
| Respondent. | § | |

**BRIEF IN SUPPORT OF MOTION FOR DISCOVERY**

Pending before the Court is Mr. Halprin's Petition for Writ of Habeas Corpus. *See* ECF No. 1 ("Petition"). Within the Petition, Mr. Halprin raises an unexhausted judicial bias claim that trial judge Vickers Cunningham, *inter alia*, described Mr. Halprin at trial, as "that fuckin' Jew and a "goddamn kike" thereby violating the Due Process Clause and his right to freely exercise his religious faith. *See Buck v. Davis*, 137 S. Ct. 759, 778 (2017) ("[O]ur law punishes people for what they do, not who they are. Dispensing punishment on the basis of an immutable characteristic flatly contravenes this guiding principle."). Further, that Cunningham's participation in Mr. Halprin's trial despite his anti-Semitic bias constitutes a structural defect which demands that the judgment of conviction and sentence of death be vacated. *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008) (A "criminal defendant

tried by a biased judge is entitled to have his conviction set aside, no matter how strong the evidence against him.") (internal quotation marks and citation omitted).

Since the filing of the Petition in this Court, Mr. Halprin has moved for stay and abeyance of federal proceedings to permit him to return to state court to exhaust this newly-discovered claim. ECF No. 8. The State has filed in opposition to the stay and abeyance of federal proceedings, ECF No. 12, and moved to dismiss the underlying Petition. ECF No. 11.

This Court should grant discovery to ensure that all available evidence in support of Mr. Halprin's meritorious judicial bias claim will be before the state court when it considers the claim, and that the record before this Court will be complete if the state court does not grant relief.

## I. Applicable Law

Federal Rule of Civil Procedure 26(b) provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." In habeas corpus proceedings "[a] party shall be entitled to invoke the process of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the case in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Habeas Rule 6(a). Good cause exists "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . .'" *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)). Then, "it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." *Ibid.*

*Bracy* illustrates that Habeas Rule 6(a)'s standard is low. The unanimous Court held, per Chief Justice Rehnquist, that a district court abused its discretion when it denied the petitioner's discovery requests because the petitioner had "made a sufficient factual showing to establish 'good cause,' as required by Habeas Rule 6(a)." *Bracy*, 520 U.S. at 901. The Court found the petitioner's factual showing sufficient even though his "sort of compensatory bias" claim was "quite speculative," "only a theory at this point," and premised on facts that "might be equally likely" to support an inference contrary to the one the petitioner advanced. *Id.* at 905, 909. Mr. Halprin need not show that he may be entitled to relief, only that there is "reason to believe" he "*may*" be able establish an entitlement for relief "if the facts are fully developed." *Id.* at 908-09 (emphasis added). This standard is more permissive than the standard for establishing entitlement to an evidentiary hearing, which requires the petitioner to "allege[] facts which, *if proved*, would *entitle* him to relief." *Townsend v. Sain*, 372 U.S. 293, 312 (1963) (emphasis added).[2]

## II. Procedural Issues

### A. "JURISDICTION"

In light of erroneous arguments the State previously made, Mr. Halprin anticipates the State will oppose this Motion on grounds that the Court lacks jurisdiction to grant the requested relief. For the reasons stated in Mr. Halprin's Motion to Stay and Abate (ECF No.

---

[2] *See also* Advisory Committee Notes to R. Gov. § 2254 Cases 6 ("Discovery may, in appropriate cases, aid in developing facts necessary to decide whether to order an evidentiary hearing or to grant the writ following an evidentiary hearing."). *Accord Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977) (approving common practice of granting discovery to habeas petitioners before need for an evidentiary hearing has been determined); *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997) (under Rule 6(a) "discovery is available to habeas petitioners at the discretion of the district court judge for good cause shown, regardless of whether there is to be an evidentiary hearing").

8) at 13-14, and his Reply to the State's Opposition to that Motion (ECF No. 14) at 4-5, which are fully incorporated herein by this specific reference, this Court has the power and authority to decide when it takes up the question of jurisdiction. Even assuming for the sake of argument that § 2244(b) of Title 28 creates a jurisdictional bar, and assuming *arguendo* the bar applies to Mr. Halprin's judicial bias claim, this Court has jurisdiction to decide when, and on what record, it decides that issue. For the reasons stated in Mr. Halprin's Reply on stay/abeyance, the argument for jurisdiction over the merits in this Court is stronger if the state court refuses to adjudicate the claim on the merits, and stronger still if it does so after factual development.

## B. EXHAUSTION

Mr. Halprin's judicial bias claim is unexhausted. But that procedural quality does not preclude discovery. It remains this Court's duty to grant the requested discovery if Mr. Halprin satisfies the *Bracy* standard, which does not consider the procedural posture of the claim relevant. Exhaustion is "not a jurisdictional requirement." *Castille v. Peoples*, 489 U.S. 346, 349 (1989). It is a sequencing rule "grounded in principles of comity and reflects a desire to 'protect the state courts' role in the enforcement of federal law.'" *Ibid.* (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1989)). When a court facilitates the ability of state courts to review claims in the "first instance," it "carries out 'AEDPA's goal of promoting comity, finality, and federalism . . . .'"[3] *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (quoting

---

[3] The only provision of AEDPA arguably related to Mr. Halprin's Motion is § 2254(e)(2) which bars an evidentiary hearing when the petitioner "failed to develop the factual basis of a claim in State court proceedings." Section 2254(e)(2) is not applicable to Mr. Halprin claim because it has not yet been the subject of any state court proceedings.

*Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009)) (alteration in original). Granting discovery before the state court considers the claim promotes comity, finality, and federalism in two ways. First, it ensures that the state court will have the first and fullest opportunity to consider the claim in light of available evidence. Under Texas law, the state court will consider both whether the factual predicate for Mr. Halprin's claim was available at the time of his last state habeas challenge, and whether "the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence." *Ex parte Campbell*, 226 S.W.3d 418, 421 (Tex. Crim. App. 2007). "There is no dispute that the [latter] prima facie showing requirement is not independent of federal law," *Rocha v. Thaler*, 628 F.3d 218, 224 (5th Cir. 2010) (Dennis, J., dissenting from the denial of reh'g en banc) (citing *Rivera v. Quarterman*, 505 F.3d 349, 359 (5th Cir. 2007)). Withholding discovery would have the perverse effect of handicapping the state court's consideration of its procedural bar while federal habeas doctrine is intended to promote the administration of state procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 93 (1977).

Second, granting discovery at this stage ensures that if the state court ultimately rejects the claim, then no relevant evidence will be excluded from this Court's review under 28 U.S.C. § 2254(d), if the state court adjudicates the claim on the merits. *See Pinholster*, 563 U.S. at 181 ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits" as it is under § 2254(d)(2)).

The Supreme Court has consistently interpreted AEDPA or modified pre-AEDPA rules to avoid foreclosing federal court review. Mr. Halprin presented his claim in this Court before presenting it in state court under the procedure authorized in *Pace v. DiGuglielmo*,

544 U.S. 408, 416 (2005). *Pace*'s idea of "filing a 'protective' petition in federal court," *ibid.*, was based on *Rhines v. Weber*, 544 U.S. 269 (2005), in which the Court retreated from the pre-AEDPA total-exhaustion rule in *Rose v. Lundy*, 459 U.S. 509 (1992), so that petitioners in Mr. Halprin's position would not "run the risk of forever losing their opportunity for any federal review of their unexhausted claims." *Rhines*, 544 U.S. at 275.

In *Panetti v. Quarterman*, 551 U.S. 930 (2007), the Court relied upon *Rhines* when holding that AEDPA's bar on "second or successive" claims could not be applied to a claim that the statute would exclude from consideration. 551 U.S. at 943-46. *Panetti* reaffirmed principles that should drive this Court's decision. First, the Court explained that it had consistently "sought to ensure our solution to this problem [of the limitations period and the exhaustion rule was] compatible with AEDPA's purposes.'" 551 U.S. at 946 (quoting *Rhines*, 544 U.S. at 276). Second, the Court has consistently "resisted an interpretation of the statute that would 'produce troublesome results,' 'create procedural anomalies,' and 'close our doors to a class of habeas petitioners seeking review without any clear indication that such was Congress' intent.'" *Ibid.* (quoting *Castro v. United States*, 540 U.S. 375, 380 (2003)).

Because exhaustion is a rule of sequencing that simply requires that state courts consider claims first—rather than a categorical bar to relief—applying *Bracy* to a pre-exhaustion claim is consistent with *Rhines* and *Panetti*. Indeed, both *Bracy* and *Rhines* require "good cause" not in some "technical sense," but "rather intended the district court find 'good cause' in the equitable sense." *Ruiz v. Quarterman*, 504 F.3d 523, 529 n.17 (5th Cir. 2007). Mr. Halprin has good cause for filing in federal court first because there is, *at the very least*, reasonable uncertainty about whether, or to what extent, the Texas Court of

6

Criminal Appeals will consider the merits of his second state habeas application. *Pace*, 544 U.S. at 416 ("A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court.").[1]

The main area of overlap in *Bracy* and *Rhines* relates to the merits. *Rhines* calls for stay/abeyance where the claim at issue is "potentially meritorious." *Rhines*, 544 U.S. at 277. *Bracy* calls for discovery under the "good cause" standard stated above. Because the *Rhines* standard is lower than the *Bracy* standard, if this Court finds Mr. Halprin has stated specific allegations that, if fully developed, may entitle him to relief in state court, this Court should grant the discovery before staying these proceedings for exhaustion purposes.

Finally, just as *Rhines* requires that a petitioner not have intended delay, 544 U.S. at 278, AEDPA bars a federal evidentiary hearing where the petitioner "failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). Mr. Halprin is attempting through this Motion to reduce delay and to gather as much evidence as possible *before* the state court has decided the merits of the unexhausted claim. He is developing the factual record with the utmost diligence so that the state court can fulfill the role AEDPA and the Supremacy Clause intend and give due consideration to his claim.

### III. Good Cause

Mr. Halprin's judicial bias claim contains specific allegations showing he may be entitled to relief if this Court authorizes the production of records within the possession of

---

[1] Mr. Halprin notes that there is reasonable uncertainty because that is the threshold he must clear for discovery purposes; but the Texas Court of Criminal Appeals should authorize subsequent litigation on his unexhausted claims under any reasonable interpretation of the applicable state provisions, for the reasons set forth in the previously filed Motion for a *Rhines* Stay. ECF No. 8.

the Dallas County District Attorney related to any allegation that Vickers Cunningham exhibited or acted with racial, ethnic, or religious animus or bias towards any employee, contractor, defendant, defense attorney, judge, court staff, law enforcement officer, or prospective or seated juror. The likewise production of Judge Cunningham's employment records from Dallas County Criminal Courts will also corroborate the allegations put forth in the Petition.

The depositions of witnesses Susan Cunningham and Kyle Rains will substantiate the allegations of Judge Cunningham's racial bias as raised within the Petition. Subpoenas for records relating to Vickers Cunningham's campaign for District Attorney of Dallas County in 2006, and the *Dallas Morning News* interview with Vickers Cunningham, reported on May 18, 2018, will lead to the production of relevant evidence and are not otherwise available. The legal and factual basis for this Court to find good cause—reason to believe Mr. Halprin may be entitled to relief if the facts are fully developed—is set out in the Petition at pages 21-33. Mr. Halprin incorporates by this specific reference those facts and legal authorities as if fully set forth herein, and further explains *infra*.

## IV. Requests For Discovery

### A. RECORDS IN SUPPORT OF THE JUDICIAL BIAS CLAIM

The evidence proffered with the Petition shows that Judge Vickers Cunningham held anti-Semitic bias against Mr. Halprin and anti-Latino bias against his co-defendants. He also demonstrated bias against black people, and especially black defendants. He expressed these views in private and they informed his thinking about his public service in the law. Judge

Cunningham's role in the trial despite his biases violated Mr. Halprin's Fourteenth Amendment Right to Due Process of Law.

As noted within his judicial bias claim, Judge Cunningham served as both an assistant district attorney and a trial judge in Dallas County. In both capacities, his professional work was marred by allegations of racial discrimination against minority defendants. As an assistant district attorney, Judge Cunningham purportedly removed all black prospective jurors during jury selection for a murder trial. *See* Pet. at 13. While a trial judge, Judge Cunningham was alleged to have said "any 'nigger' or 'wetback' walking into his courtroom knew they were going to go down." App. 3, McKinney Decl. ¶ 12.

To corroborate and add to the evidence of Judge Cunningham's racial bias, Mr. Halprin moves for the production of any and all records within the possession, custody, or control of the Dallas County District Attorney related to any allegation that Vickers Cunningham exhibited or acted with racial, ethnic, or religious animus or bias towards any employee, contractor, defendant, defense attorney, judge, court staff, law enforcement officer, or prospective or seated juror. Similarly, he seeks Judge Cunningham's employment records from Dallas County Criminal Courts to the same extent.

Complaints about offensive behavior would be consistent with the allegations presented by Mr. Halprin and other independent observers. Even the absence of complaints would support a finding that Judge Cunningham was careful to conceal his racist and anti-Semitic beliefs so that he could continue to act upon them. Mr. Halprin is unable to obtain the Dallas County District Attorney's records because: 1) the office is a party as it represents the State in ongoing state post-conviction proceedings, and 2) Texas privacy law likely

9

restricts Mr. Halprin's access to Judge Cunningham's confidential employment records for the time period that he was an assistant district attorney.[5] Because the Dallas County trial court is the court from which Mr. Halprin's case originates and Judge Cunningham's employment records are likely protected by Texas privacy laws[6], Mr. Halprin's efforts to obtain the judicial employment records are frustrated for similar reasons.

## B.   DEPOSITIONS IN SUPPORT OF THE JUDICIAL BIAS CLAIM

### The Anti-Miscegenation Trust

Within his judicial bias claim, Mr. Halprin presents specific allegations that Judge Cunningham frequently employed anti-Semitic slurs against Mr. Halprin when discussing his case, as well as toward other Jewish individuals. *See* App. 2, McKinney Decl. ¶ 7 (calling Mr. Halprin a "fucking Jew"); App. 3, McKinney Decl. ¶ 13 (on a separate occasion, referring to Mr. Halprin as "that fuckin' Jew" and a "goddamn kike"); App. 8, Tackett Decl. ¶ 13 (Cunningham "privately complained that the 'filthy Jew' [Barry Scheck] was going to come in and free all these niggers."). Mr. Halprin incorporates by this specific reference the attachments to his Petition cited above, as if fully set forth herein.

---

[5] Texas Government Code Section 552.117 excepts from required public disclosure confidential identifying information for "[f]ederal and [s]tate [j]udges .... a current or former district attorney, criminal district attorney, or county or municipal attorney whose jurisdiction includes any criminal law or child protective services matters" (Tex. Gov. Code § 552.117; § 552.1175).

[6] *See* Tex. J.R.A Rule 12.5 (Texas Rules of Judicial Administration exempts from public disclosure records for members of the judiciary relating "personnel information, personal confidential information, application for employment, internal deliberations on court or judicial administration matters, a complaint alleging misconduct against a judicial officer, litigation or settlement negotiations, or investigations of character or conduct.").

These examples illustrate Judge Cunningham's long-standing bias against Jewish persons in professional and personal settings. Another example illustrates that Judge Cunningham would use legal means available to him to enact his prejudices in the lives of others. Declarants Tammy McKinney and Amanda Tackett both attested to a 2014 incident in which Judge Cunningham "interfered with his daughter's ... relationship with a young Jewish man when she was in college at Texas A&M," App. 4, McKinney Decl. ¶ 14, instructing his daughter to break up with "that Jew boy." App. 9, Tackett Decl. ¶ 21.

The Jewish young man, Michael Samuels, confirmed the incident. *See* App. 11, Samuels Decl. ¶¶ 2-3. Samuels confirmed that he dated Cunningham's daughter Suzy for two and a half years and that he realized that Cunningham "did not want to meet with [him] because [he is] Jewish." *Id.* ¶ 2. Suzy Cunningham unexpectedly broke up with Samuels in 2014. She explained that "her father did not like [Samuels] because [he] was Jewish" and her father threatened not to pay for her law school tuition unless she broke up with Samuels. *Id.* ¶ 3.

Judge Cunningham's interference in his daughter's relationship is consistent with his admitted creation of a living trust that provided for distributions to his children upon their marriages but only if the adult children satisfied an anti-miscegenation provision that also precluded marrying Jews (or Muslims, or Buddhists, or, presumably, atheists and agnostics).

Mr. Halprin requests the deposition of Susan "Suzy" Cunningham to gather additional evidence related to Judge Cunningham's use of his influence over others to carry out an agenda consistent with his biases.

11

*Kyle Rains's "Tweet"*

When asked in a videotaped interview by the *Dallas Morning News* whether he ever used the n-word, Judge Cunningham first asked if the reporter meant had he ever used it in court, then, when she clarified that she meant "ever," he paused before asking again whether she meant "in court," then, after another pause, when the editor clarified again, the judge denied ever using the word. App. 13, DVD of Interview.[7] Judge Cunningham also has denied that he used the ethnic and religious slurs mentioned in Mr. Halprin's petition. App. 15, June 11, 2019, *Dallas Morning News*; *see also* App. 2, McKinney Decl. ¶5 ("[h]e would regularly use offensive" language "such as 'nigger,' 'wetback,' 'spic,' 'kike,' 'the fuckin' Jews.'"); App. 7 Tackett Decl. ¶7 ("[Cunningham] said that he was running for DA so that he could return Dallas to a Henry-Wade style of justice where we did not have to worry about 'niggers,' Jews, 'wetbacks,' and Catholics.").

After the interview with Cunningham aired and an accompanying article was published, an individual named "Will Maddox" posted a link to the news article highlighting Judge Cunningham's nine second delay in response on his Twitter webpage. App. 20, Twitter exchange. Another Twitter user identified as "Kyle Rains" posted a Tweet replying to Maddox's posting in which Rains stated that he heard Judge Cunningham call his African-American friend the n-word. App. 20, Twitter exchange ("I've heard him say [the n-word]. He used it very malevolently against a black friend of mine.").

---

[7] Copies of the DVD have been previously filed with the Court and submitted to Chambers. Should the Court desire an additional copy of the DVD, counsel will provide such.

Mr. Halprin has identified Mr. Rains as a fellow resident of Lakewood with Judge Cunningham who went to the same high school. App. 21, 24, Lakewood Advocate Magazine articles. Mr. Halprin anticipates that Mr. Rains will confirm his Tweet and thereby corroborate other witnesses who state that Judge Cunningham slurred members of racial minority groups and discredit Judge Cunningham's denials of using the n-word and other slurs. He seeks to depose Mr. Rains because despite all efforts, Mr. Rains has been unwilling to volunteer a written statement to investigators. *See* App. 28-30, De la Rosa Decl.

## C.  SUBPOENAS IN SUPPORT OF THE JUDICIAL BIAS CLAIM

Mr. Halprin has proffered evidence that Judge Cunningham unconstitutionally concealed his anti-Semitic bias at the time of trial, appeal, and collateral review proceedings, and disparaged Mr. Halprin and his co-defendants with stereotypes and slurs spoken in protected private conversations. Particularly, Judge Cunningham spoke in biased terms about Mr. Halprin and other racial minorities during his campaign for the Dallas district attorney. Pet. at 12-19. Mr. Halprin incorporates those allegations and arguments by this specific reference as if fully set forth herein.

Based on evidence gathered to date, Mr. Halprin and this Court have good cause to believe documents may exist that would corroborate the declarations of Judge Cunningham's lifelong friend, Tammy McKinney, his one-time campaign aide, Amanda Tackett, and his daughter's former boyfriend, Michael Samuels, and that would add to the evidence gathered by *The Dallas Morning News*. Based on these witnesses' proffered evidence, Mr. Halprin moves this Court to authorize subpoenas for the following records:

13

From Vickers Cunningham and any business or other entity formed for the purpose of or that acted in support of his campaign to be district attorney of Dallas in 2006 wherever such person or entity may have possession, custody, or control: Any and all documents or electronically stored information related to Vickers Cunningham's efforts to gain support from members of the Jewish community in Dallas, including but not limited to George Milner and Stephen Tobolowsky, and efforts to gain support from members of the African-American community, including but not limited to the S.M. Wright Foundation. These documents or electronically stored information include, but are not limited to, calendars (personal and professional), financial documents, campaign fundraising reports, emails, letters, memoranda, speeches or statements, audio or video recordings, and photographs or digital images.

**Reason to believe the records exist and will support Mr. Halprin's claim:**

In late 2005, Judge Cunningham resigned his judicial seat in order to run in the Republican primary for Dallas District Attorney. During the campaign, Judge Cunningham emphasized his role in sentencing five of the "Texas Seven," but kept racial animus behind closed doors and expressed it to those who would find it attractive. Amanda Tackett has submitted a declaration to this Court describing her work for Judge Cunningham's 2006 campaign to become district attorney. App. 6-10, Tackett Decl. Ms. Tackett has identified for counsel individuals and groups from whom she recalls Cunningham soliciting support during the campaign. She also described Judge Cunningham's practice of donning what he called his "nigger tie" before campaigning to African-American constituents. She also has described his solicitation of support from groups and individuals he would later disparage

14

behind their backs, including a Lakewood event at which he obtained a check from a person he called "the Jew." She also has described his use of religious and ethnic slurs when speaking to select audiences. Evidence of Judge Cunningham's duplicitous and prejudiced conduct would support a finding that he concealed his anti-Semitic bias towards Mr. Halprin and his anti-Latino bias towards Mr. Halprin's co-defendants. Mr. Halprin has thus proffered reason to believe he may be entitled to relief if the facts are fully developed through the evidence sought here.

From *The Dallas Morning News*: Any and all documents or electronically stored information memorializing, recording, or documenting the interview with Vickers Cunningham reported on May 18, 2018.

**Reason to believe the records exist and will support Mr. Halprin's claim:**

*May 18, 2018 Dallas Morning News Exposé*

In 2018, Cunningham again entered the political arena to run for county commissioner. *See* Pet. at 16-17. On May 18, 2018, *The Dallas Morning News* published an article describing Judge Cunningham's creation of a trust fund for his children that included an anti-miscegenation provision, and charges that his mother, brother, and close associates knew him to be "a longtime bigot." Pet. at 17.

The newspaper also published an edited video of an interview with Judge Cunningham. Undersigned counsel has reviewed the edited *Dallas Morning News* video and offers his comparison:

> The video posted with the article is two minutes and eighteen seconds long. It is apparent that the video posted online is an edited excerpt of a longer interview. It begins with a question from someone off-camera that

15

could not have been the beginning of the interview because there is no prefatory speech. Then there is a visible dissolve indicating that some of the recording was cut out before it resumes with Judge Cunningham explaining how the trust works. Then there is another dissolve before the person off-screen asks why Judge Cunningham included the requirement that his children marry white, heterosexual, Christians if they want the marriage distribution allowed under the trust. Then there is another visible edit, this time a wipe, before the same female voice asks Judge Cunningham if ever used the "n-word." In addition to the obvious edits, a photograph accompanying the article shows Judge Cunningham sitting at a conference table with his brothers Ross and Greg Cunningham sitting to his right. The caption states that the photograph shows Judge Cunningham "speak[ing] during an interview at *The Dallas Morning News* on Friday" before the story ran. In the photograph, Judge Cunningham holds his right index finger aloft. He does not make that gesture in the video posted online.

App. 31-32, Schardl Decl. ¶ 3.

Rudy Bush, deputy editor at the *Dallas Morning News*, declined confirming or denying whether the video posted online was edited. But, he stated that the newspaper would not release its full recording to Mr. Halprin without a subpoena or court order. *See* App. 32, Schardl Decl. ¶ 4.

The complete video, and any other memorialization of the interview, will further develop the evidence of judicial bias including, *inter alia*, Judge Cunningham's efforts to explain his biased in terms of his "faith as a Christian" which would support a finding that he held his biases at the time of trial, and his efforts to deny prejudice, and how people close to him, like his brothers Greg and Ross who were present for the interview, have stood by him while he concealed and denied his bigotry. It may be that the interview also confronts Judge Cunningham with other events such as his interference with his daughter's relationship with

a Jewish man, which would tend to show that Judge Cunningham was willing to use his power and influence to damage the life of a Jew with whom he came into contact.

Mr. Halprin likewise moves to authorize a subpoena for probate civil suit records in the litigation involving brothers Bill and Vickers Cunningham. Within these records are an audiotaped statement by their mother richly describing the full extent of Cunningham's bigotry. *See* App. McKinney Decl. ¶ 17. This audio recording will substantiate Mr. Halprin's claim that Judge Cunningham's racial bias was long-standing at the time of his trial. Mr. Halprin will stipulate to a protective order that requires these records only be submitted under seal, and that precludes their dissemination and use for any purpose other than the litigation of his judicial bias claim.

## CONCLUSION

Mr. Halprin "may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy*, 520 U.S. at 908-09. Accordingly, it is "the duty of the court to provide the necessary facilities for an adequate inquiry." *Id.* In light of the foregoing discussion, the Court should order discovery of the materials identified above.


DATED: July 17, 2019                    Respectfully submitted,

                                        PAUL E. MANSUR
                                        Texas Bar No. 796078
                                        P.O. Box 1300
                                        Denver City, Texas 79323
                                        (806) 592-2797 (tel.)
                                        (806) 592-9136 (fax)
                                        paul@paulmansurlaw.com

MAUREEN FRANCO
FEDERAL PUBLIC DEFENDER

*/s/Tivon Schardl*
TIVON SCHARDL
CAPITAL HABEAS UNIT CHIEF
Florida Bar No. 73016
TIMOTHY GUMKOWSKI
ASSISTANT FEDERAL DEFENDER
Texas Bar No. 24104788
Federal Defender Office
919 Congress, Suite 950
Austin, Texas 78701
737-207-3007 (tel.)
512-499-1584 (fax)

Attorneys for Petitioner

## CERTIFICATE OF CONFERENCE

On July 17, 2019, undersigned counsel for Petitioner conferred with counsel for Respondent, Deputy Attorney General Jennifer Wren Morris, who authorized Petitioner to state that Respondent opposes the relief sought in this Motion.

*/s/ Timothy Gumkowski*
Timothy Gumkowski


## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of July, 2019, I electronically filed the foregoing Motion for Discovery and Brief in Support with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jennifer Wren Morris
Office of the Attorney General of Texas
300 W 15th Street
Austin, TX 78701

*/s/ Timothy Gumkowski*
Timothy Gumkowski