IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RANDY ETHAN HALPRIN**, TDCJ No. 999453, | § § § | |
| Petitioner, | § § § | |
| v. | § § | Civil Action No. **3:19-CV-1203-L** |
| **LORIE DAVIS**, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § § | |
| Respondent. | § § | |

## ORDER TRANSFERRING POTENTIALLY SUCCESSIVE PETITION

Before the court is the Petition for Writ of Habeas Corpus ("Petition") (Doc. 1), filed by Petitioner Randy Ethan Halprin ("Halprin" or "Petitioner") on May 17, 2019, to challenge his 2003 conviction for capital murder and sentence of death. Also before the court are a number of related motions and requests for relief (Docs. 8, 9, 11, 13, 17). For the reasons herein explained, the court determines Halprin's May 17, 2019 Petition should be transferred to the Fifth Circuit, as it lacks subject matter jurisdiction to entertain the Petition. The court, therefore, **directs** the clerk of the court to **transfer** the Petition (Doc. 1) to the Fifth Circuit, in accordance with 28 U.S.C. §§ 1631 & 2244(b), for determination of whether it should be allowed to proceed. The court also **denies** Petitioner's IFP application (Doc. 9) and **denies as moot** the remaining motions pending in this case (Docs. 8, 11, 13, 17).

I. **Factual and Procedural Background**

Halprin is currently set for execution on October 10, 2019, for the murder of Irving Police Officer Aubrey Hawkins. Halprin filed his original petition for federal habeas corpus relief in Civil Action No. 3:15-CV-1535-L, on March 20, 2014 (Doc. 5), to challenge his 2003 Dallas County capital murder conviction and sentence of death, which he amended on June 17, 2014 (Doc. 15).

After the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") denied a CoA on December 17, 2018, in *Halprin v. Davis*, 911 F.3d 247 (5th Cir. 2018), Halprin filed a petition for writ of certiorari on June 14, 2019 (no. 18-9676) with the United States Supreme Court. Thus, Halprin has already fully litigated one federal habeas corpus action in this court, which, unlike his new Petition, did not include an assertion that he was denied due process because his state trial judge possessed disqualifying bias.

As noted, Halprin filed his current Petition on May 19, 2019. Shortly thereafter, on May 22, 2019, he moved to stay and abate the proceedings in this case so that he can return to state court and litigate a new claim accusing his state trial judge of disqualifying bias (Doc. 8). Petitioner also filed a motion seeking leave to proceed In Forma Pauperis ("IFP") (Doc. 9). Respondent Lorie Davis, Director of the Texas Department of Criminal Justice Correctional Institutions Division ("Respondent"), opposes Halprin's Petition and request to stay and abate the proceeding in this case. On June 12, 2019, Respondent moved to dismiss Halprin's Petition (Doc. 11), contending that the Petition is impermissibly successive because it challenges the same judgment that he previously challenged in Civil Action No. 3:13-CV-1535-L, and his new due process claim based on judicial bias does not fall within the exception under 28 U.S.C. § 2244(b)(2).

On July 17, 2019, Petitioner filed a motion for discovery (Doc. 17), which Respondent opposes. On August 21, 2019, Petitioner filed additional evidence in support of his new habeas claim that his state trial judge possessed disqualifying bias because he is now and was a racist and Anti-Semite at the time of his murder trial. Also pending is a Motion for Leave to File Amicus Brief in Support of Petition for Writ of Habeas Corpus (Doc. 13), which was filed June 19, 2019, by the Anti-Defamation League.

**II.     Discussion**

Because this is not the first time Halpin has sought federal habeas corpus relief, his current Petition is governed by Title 28 U.S.C. § 2244(b)(2), which provides that a claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless either: (1) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (2) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence and the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the Petitioner guilty of the underlying offense.

This court is not the appropriate forum to litigate the issue of whether Petitioner's new claim is, in fact, barred by section 2244(b).    In 28 U.S.C. § 2244(b)(3), Congress made the federal Circuit Courts of Appeals the exclusive arbiters of whether a new claim satisfies the standard set forth in section 2244(b)(2), by requiring a federal habeas petitioner, who is seeking to assert a new claim not presented in a prior federal habeas proceeding, to move in the appropriate court of appeals for an order authorizing the district court to consider the new application.   Congress granted to the courts of appeals the sole authority to determine whether the petitioner may proceed. *See* 28 U.S.C. § 2244(b)(3)(C) ("The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection."). The court of appeals' grant or denial of authorization to file a second or successive application is not subject to further review by appeal, a petition for rehearing, or writ of certiorari.    28 U.S.C. § 2244(b)(3)(E).    As a result,    the Fifth

Circuit is the sole and exclusive arbiter of whether Petitioner's new claim may be brought in this court, and the issue before this court is not whether to grant or deny Petitioner's motion to stay and abate his new Petition or whether this court should dismiss the Petition as successive but, rather, whether the new Petition should be transferred as a second or successive petition to the Fifth Circuit in accordance with 28 U.S.C. §§ 1631 & 2244(b).

Halprin argues that his May 17, 2019 Petition is not a "second or successive petition" because: (1) the factual predicate for his new claim was not previously available; and (2) his claim of judicial bias, like the competency-to-be-executed claims raised in *Panetti v. Quarterman*, 551 U.S. 930 (2007), and *Stewart v. Martinez-Villarreal*, 523 U.S. 637 (1998), does not depend on the factfinders' assessment of guilt.   Petitioner fails to acknowledge, however, that the type of claims asserted by Panetti and Martinez-Villarreal, that is, claims that a convicted defendant facing a sentence of death lacked sufficient mental competence to be executed under the standard announced in *Ford v. Wainwright*, 477 U.S. 399 (1986), are quite different in nature from his claim of judicial bias based upon allegedly newly discovered evidence.   As the Fifth Circuit has recently explained, claims based upon a convicted murderer's assertion that he is mentally incompetent to be executed are unique in their fluidity:

> [A] *Ford* incompetency-to-be-executed claim is not necessarily "successive" even if raised in a second or subsequent habeas application. A *Ford* claim can be raised in multiple proceedings and not be "successive." That is because mental incompetence to be executed is not categorically a permanent condition. Incompetence may occur at various points after conviction, and it may recede and later reoccur. A finding that an inmate is incompetent to be executed does not foreclose the possibility that she may become competent in the future and would no longer be constitutionally ineligible for the death penalty. By contrast, intellectual disability is by definition a permanent condition that must be manifested before the age of 18. A person who is found to be intellectually disabled is permanently ineligible to be executed, and the sentence of death is vacated.

*Busby v. Davis*, 925 F.3d 699, 713 (5th Cir. 2019) (footnotes omitted).  Halprin's assertion that his trial judge possessed a disqualifying bias (at a discrete point in time) is far more analogous to Busby's assertion that he was intellectually disabled than to Panetti and Martinez-Villarreal's assertions that they were incompetent to be executed.   Thus, the holdings in *Panetti* and *Martinez-Villarreal* addressing *Ford* claims, which are subject to transitory factors, do not govern Petitioner's assertion of judicial bias at a particular point in time, which in this case would be the time of his 2003 capital murder trial.

Moreover, while Halprin maintains that he has only recently discovered evidence of his trial judge's alleged anti-Semitic bias from a May 2018 newspaper article, the source material for that article, and the affidavits and other "new evidence" accompanying his latest Petition, include public statements allegedly made by the trial judge at or near the time of his 2003 capital murder trial. Specifically, the letter by the trial judge to the Governor of Texas was written in 2005, photographs in college and law school yearbooks were published almost four decades ago, and interviews and affidavits reflecting public statements allegedly made by the trial judge date as far back as thirty years ago. Additionally, in the materials accompanying Petitioner's latest Petition, multiple persons who claim to have known the trial judge as a young man recite alleged instances of public statements made by him reflecting racial or anti-Semitic bias. Because the trial judge's alleged anti-Semitic bias was a matter of public knowledge long before Halprin's capital murder trial, his own evidence raises issues regarding his diligence in bringing his latest claim. In other words, Petitioner waited, without explanation, until the last possible minute before coming forward with his "new" evidence of alleged judicial bias in May 2019 to bring to the court's attention a newspaper article published in May 2018.

5

For the reasons discussed above, however, this court is not the proper forum to litigate whether Petitioner's evidence of alleged judicial bias truly qualifies as "newly discovered," whether his evidence of alleged judicial bias was unavailable before May 2018, or whether he exercised due diligence in asserting his latest claim, as the Fifth Circuit has exclusive jurisdiction to determine such matters. Absent authorization from the Fifth Circuit, the court lacks subject matter jurisdiction. The court will, therefore, transfer Halprin's Petition, pursuant to 28 U.S.C. § 1631, to the Fifth Circuit for a determination of whether his new claim satisfies the requirements of section 2244(b) for a second or successive petition and should be allowed to proceed.

### III. Conclusion

For the reasons explained, the court **directs** the clerk of the court to **transfer** Petitioner's May 17, 2019 Petition (Doc. 1) to the Fifth Circuit, in accordance with 28 U.S.C. §§ 1631 & 2244(b), for determination of whether it should be allowed to proceed.

As the certified copy of Petitioner's inmate trust account statement accompanying his IFP application indicates that he has more than $200 available with which to pay the $5 filing fee in this case, the court **concludes** that he possesses sufficient resources to pay the modest filing fee, even though he may lack sufficient resources to retain legal counsel. The court, therefore, **denies** his IFP application (Doc. 9), and **directs** him to pay the clerk of the court the $5 filing fee on or before **30 days** from the date of this order.

As the decision to transfer Halprin's Petition to the Fifth Circuit moots the other pending motions, the court **denies as moot** these motions (Docs. 8, 11, 13, 17), and **directs** the clerk of the court to term the motions.

**It is so ordered** this 27th day of August, 2019.

_____
Sam A. Lindsay
United States District Judge